# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

In Re:

**JEANNINE Y. WARKENTIN,**

**Debtor.**

**Bankruptcy Case
No. 08-41257-JDP**

_____

## MEMORANDUM OF DECISION
_____

**Appearances:**

Larry Warkentin, Ridgecrest, California, Pro-Se.

Scot and Sharon Homer, Ridgecrest, California, Pro-Se.

Monte Gray, GRAY LAW OFFICES, PPLC, Pocatello, Idaho, Attorney for Trustee

MEMORANDUM OF DECISION - 1

**Introduction**

In August 2010, the Court entered an order authorizing the chapter
7[1] trustee in this case, R. Sam Hopkins ("Trustee"), to sell certain real
property in California free and clear of a one-half ownership interest in
that property held by Larry G. Warkentin ("Warkentin").  When Trustee
filed his motion for approval of this sale in late 2011, however, he did not
send notice of the motion or hearing to Warkentin.  In spite of the Court's
attempts at the motion hearing to verify that proper notice was given to
Warkentin, Trustee's counsel did not make it clear that notice had not been
sent to him.  As a result, assuming notice to Warkentin was proper, the
Court granted the motion and approved the sale.

When Warkentin finally learned of the sale approval from a third
party approximately one month later, he immediately contacted Trustee's
attorney regarding his lack of notice and the as-yet unclosed sale.

---

[1] Unless otherwise indicated, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all references are to the Federal
Rules of Bankruptcy Procedure, Rules 1001–9037.  References to the Civil Rules
are to the Federal Rules of Civil Procedure, Rules 1–86.

MEMORANDUM OF DECISION - 2

Regrettably, Trustee completed the sale of the property, including

Warkentin's interest, the next day.

Warkentin promptly requested that the Court void the sale.[2]  In his

response to Warkentin's request, Trustee asserts that Warkentin, despite

not having received notice of the impending sale, has not shown he is

entitled to relief from the order approving the sale.  The Court conducted a

hearing on March 27, 2012, and took the issues under advisement.  Having

considered the record in this case, the  parties' submissions, and applicable

law, this Memorandum disposes of Warkentin's motion.  Rule 7052, 9014.

### Background and Facts[3]

Chapter 7 debtor Jeannine Yvette Warkentin ("Debtor") filed a

bankruptcy petition on December 12, 2008.  Bk. Dkt. No. 1.  In her

---

[2]  Warkentin's pleading filed with the Court is titled "Opposition to Sale of Real Property."  Dkt. No. 40.  Because the Opposition, essentially, requests relief from the Court's order based on Warkentin's lack of notice of the sale, the Court elects to treat Warkentin's request to be one under Civil Rule 60(b)(4), made applicable in bankruptcy cases through Rule 9024.

[3]  Unless otherwise noted, this information is from the undisputed assertions of the parties' briefs, submissions, and arguments at the March 27, 2012, hearing on this matter.

MEMORANDUM OF DECISION - 3

schedules, Debtor listed an interest in property located at 215 S. Hawk

Street, Inyokern, California ("the Property").[4]  *Id.* at 8.  Warkentin, Debtor's

ex-husband, also held an interest in the Property.  Adv. No. 09-8081, Dkt.

No. 24, Memorandum of Decision ("Adversary Decision") at 12–13.

Trustee, desiring to liquidate the Property for the benefit of Debtor's

creditors, initiated an adversary proceeding to sell the Property free and

clear of Warkentin's interest.  Adv. Dkt. No. 1.  After a June 11, 2010, trial,

at which Warkentin appeared *pro se*, the Court determined Warkentin

owned an undivided, one-half interest in the Property, and, pursuant to

§ 363(h), authorized Trustee to sell the Property free and clear of that

interest.  Adversary Decision at 12–13, 18.

Trustee thereafter marketed the Property.  In October 2011,

Warkentin learned from a third party that Trustee had listed the Property

for sale at $59,000.  Warkentin estimated what he believed Debtor's estate

---

[4]  While Debtor, in her schedules, identified her interest in the Property as
a community property interest, the Court, in Trustee's adversary proceeding
against Warkentin, determined each spouse held a one-half undivided interest in
the Property as joint tenants.  Adv. Dkt. No. 24 at 12–13.

MEMORANDUM OF DECISION - 4

would recover if a sale occurred at that price, and offered Trustee's

attorney, Monte Gray ("Gray"), $6,000 for the estate's interest in the

Property.[5]   While Gray indicated he would convey Warkentin's offer to

Trustee, and then respond, he never responded to Warkentin.[6]

After a lengthy search for a retirement property, Scot and Sharon

Homer ("the Homers") identified the Property through a realtor, and made

Trustee a $55,000 cash purchase offer.[7]   *See* Bk. Dkt. No. 47-1.   On

November 23, 2011, acting through Gray, Trustee filed a motion, and

scheduled a hearing, seeking the Court's approval of the Homer sale.   Bk.

Dkt. Nos. 32, 33.   Relying on Rule 2002(a) and (c), Gray sent notice of the

---

[5]   Apparently, Warkentin had made Trustee previous offers on the Property.   Trustee, however, considered those proposals, which were all for less than $6,000, to be "low-ball" offers.   Warkentin estimated a sale for $59,000 would net Trustee around $8,000 for Debtor's estate after paying off a lien against the Property and Warkentin's interest.   While Trustee considered the $6,000 to be yet another low-ball offer, Warkentin believed it was reasonable.

[6]   At the March 27, 2012, hearing, Gray indicated that, because the $6,000 offer was a "low-ball" offer, it may have been "overlooked."

[7]   The Homers indicate they only made an offer on the Property after reading about bankruptcy sales and coming to believe that § 363(m) of the Code, a provision discussed below, would "protect [them] as good faith buyers."

MEMORANDUM OF DECISION - 5

motion hearing, and of the proposed sale, to Debtor and all creditors; no

notice was sent to Warkentin, however.  *See* Bk. Dkt. No. 34.

The hearing on Trustee's proposed sale was held January 10, 2012.

*See* Bk. Dkt. No. 36.  Only Gray and Trustee appeared.  *Id.*  The Court

found it odd that Warkentin, who had hotly contested the adversary

proceeding, and had used the Property as the primary home for his family,

did not appear either in person, or through filing a pleading.  Motivated by

this curiosity, the Court asked if Warkentin had been notified of, and

advised of his right to be heard concerning, the proposed sale of the

Property.  Tr. Hr'g. (Jan. 10, 2012) at 5:6–6:20.[8]  In Trustee's presence, Gray

informed the Court that Warkentin had contacted Gray soon after Trustee's

motion was filed, that Warkentin had not raised an objection to the motion,

---

[8] According to the sale motion and notice, if any party willing to pay
more for the Property than was offered by the Homers objected to the proposed
sale, the Court could conduct an auction at the hearing, with the high bidder
required to close the sale within thirty days.  Bk. Dkt. No. 34 at 4.  As addressed
below, it is doubtful this "auction" option, even had he known of it, would have
adequately afforded Warkentin his rights to match the Homers' offer under §
363(i).

MEMORANDUM OF DECISION - 6

and that Warkentin knew of his right to bid on the Property.[9]

---

[9] The following is a verbatim account of the Court's exchange with Gray and Trustee:

> THE COURT:   Have you heard anything from the co-owner about the proposal of the sale?
>
> MR. GRAY:   I did hear from him early on, after the motion.  It wasn't an objection.  He was calling me up requesting what his rights were.  Asking if he was able to actually match that price.
>
> THE COURT:   'Cause this is a house, as I recall.
>
> MR. GRAY:   That is correct.
>
> THE COURT:   It's occupied.
>
> MR. GRAY:   Well, it's currently not occupied.  He's actually –
>
> THE COURT:   It was occupied.
>
> MR. GRAY:   – he moved out and – and he did ask some questions about some of what he could do in that matter.  I did refer him to an attorney, however I did advise him that he did have some possible rights there.

Tr. Hr'g. (Jan. 10, 2012) at 5:6–5:21.

> THE COURT:   The co-owner was advised of his right to bid on this property?
>
> MR. GRAY:   That is correct, Your Honor.
>
> THE COURT:   And that was – is it Mr. Warkentin, as I remember?

(continued...)

MEMORANDUM OF DECISION - 7

*Id.* at 5:6–5:11, 6:13–6:15.  The Court was satisfied with this explanation on the record, and approved Trustee's motion and sale in an Order Authorizing Sale of Real Property entered on January 13, 2012.  Bk. Dkt. No. 38.[10]

Upon further review of the record, it is now clear that Warkentin's name did not appear on the certificate of service filed by Gray concerning the sale motion and hearing.  Bk. Dkt. No. 32.  And, contrary to the implications of the information provided to the Court at the hearing, the Court now finds that notice of the sale motion and hearing had not been sent to Warkentin by Gray,[11] and that, while Warkentin had contacted Gray

---

[9](...continued)
                    MR. GRAY:    That is correct.
Tr. Hr'g. (Jan. 10, 2012) at 6:13–6:18.

[10]   In hindsight, the Court likely should have ordered Trustee to amend the certificate of service to reflect what the Court was told in the courtroom concerning notice to Warkentin.  On the other hand, the Court prefers to think it should be able to rely upon the representations of trustees and attorneys made in open court.

[11]   Trustee's response to Warkentin's present motion misses the point badly by arguing it was Warkentin's fault he did not receive notice.  Bk. Dkt. No.
                                                    (continued...)

MEMORANDUM OF DECISION - 8

after the conclusion of Trustee's adversary proceeding against him,

Warkentin did not contact Gray between the time of the filing of the

motion to sell the Property free of his interest and the hearing on that

motion.[12]

On February 9, 2012, the day before Trustee's sale to the Homers was

set to close, Warkentin learned of the sale from a third party.  That

afternoon, Warkentin engaged in an email dialogue with Gray.  At bottom,

Warkentin sought an explanation from Gray as to how a sale could occur

without him receiving notice of the hearing at which the sale was

---

[11](...continued)
52 at 4–5 ("If Mr. Warkentin wanted notice of the sale, he had an affirmative duty
to make an appearance and request to be put on the court's mailing matrix.").
While Trustee is correct that Warkentin could have assured his name would be
included on the mailing matrix by filing a request to the Clerk, it was not his
"affirmative duty" to do so.  Moreover, even if he made such a request, he would
still have been dependent upon Trustee or Gray to actually send him notice in
compliance with the Rules.

[12]  In a February 13, 2012, email to Warkentin, Gray stated, "I believe we
haven't spoken for more than a year . . . ."  Bk. Dkt. No. 40 at 12.  In contrast,
Warkentin represents that he contacted Gray a month before Trustee filed his
motion for sale approval, but maintains he did not receive notice of the proposed
sale to the Homers, and did not contact Gray again, until the day before the sale
closed.  *Id.* at 3–4.  The Court accepts Warkentin's account of the facts as more
credible.

MEMORANDUM OF DECISION - 9

approved.  Warkentin wrote:

> As I understood it, WHEN you had a valid offer
> and settled on a sales price, I (under the law you
> quoted during the trial one-and-a-half years ago)
> am required to be notified and to have the right of
> first refusal at the purchaser's sales price.
>
> None of these things have happened . . .

Bk. Dkt. No. 40 at 15 (emphasis in original).  Gray responded just hours

before the sale closed, asserting notice for the sale approval hearing was

properly given pursuant to Rule 2002(a) and (c).  *Id.* at 13–14.  He added:

> You do have the right to pay the purchase price
> prior to the closing of the sale.  From our
> discussions, you said you did not have the money
> to do so.  Are you wishing to exercise that right?
> If so, you need to notify me and present the cash
> or certified funds of $55,000 prior to the closing
> today.  You will get back your portion of those
> proceeds upon closing of the sale.

*Id.*  Warkentin replied that, "having only received notice of the accepted

'offer' price of $55,000 and the scheduled closing as of yesterday," he was

not able to raise the $55,000 prior to the closing that afternoon.  *Id.* at 13.

He noted, however, that "[h]ad [he] had notice in January, when the offer

was accepted . . . [he] could have done something . . . ."  *Id.*

MEMORANDUM OF DECISION - 10

Trustee and the Homers closed on the Property on February 10, 2012.

Warkentin filed his pleading asking to have the sale voided on February 22, 2012, asserting he did not receive adequate notice of the proposed sale's hearing, and was not provided an adequate opportunity to match the Homers' proposal.  Trustee opposed Warkentin's motion, asserting Warkentin has not demonstrated the requirements for relief from the sale order under Civil Rule 60(b), incorporated by Rule 9024.  For their part, the Homers, now caught in the middle of this unfortunate dispute, argue that, even if the Court reverses the order authorizing Trustee to sell the Property to them, the sale is still valid pursuant to § 363(m).[13]

On this record, the Court concludes the sale from Trustee to the

---

[13]  Section 363(m) provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

MEMORANDUM OF DECISION - 11

Homers was void.

## Discussion

**1.** **The Order Approving Trustee's Sale of the Property to the Homers Free and Clear of Warkentin's Interest is Void.**

Civil Rule 60(b) enumerates the reasons for which a court may relieve a party from a final judgment or order,[14] including because "the judgment is void." Civil Rule 60(b)(4). To be void for the purposes of Civil

---

[14] Civil Rule 60(b) provides:

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

MEMORANDUM OF DECISION - 12

Rule 60(b)(4), a judgment or order must be more than merely erroneous;

the issuing court must have lacked jurisdiction, or acted inconsistently

with due process of law, in entering the order.  *Sasson v. Sokoloff (In re

Sasson)*, 424 F.3d 864, 876 (9th Cir. 2005) (citing *U.S. v. Berke*, 170 F.3d 882,

883 (9th Cir. 1999)).

For any proceeding that results in the issuance of a final judgment or

order, fundamental notions of due process require:

> notice reasonably calculated, under all the
> circumstances, to apprise interested parties of the
> pendency of the action and to afford them an
> opportunity to present their objections.  The
> notice must be of such nature as reasonably to
> convey the required information . . . and it must
> afford a reasonable time for those interested to
> make their appearance.

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (internal

citations omitted).  The purpose of requiring such notice is to "apprise the

affected individual of, and permit adequate preparation for, [the]

impending 'hearing.'"  *Owens-Corning Fiberglas Corp. v. Ctr. Wholesale, Inc.

(In re Ctr. Wholesale, Inc.)*, 759 F.2d 1440, 1448 (9th Cir. 1985) (quoting

MEMORANDUM OF DECISION - 13

*Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 (1978)).  The Code's

and Rule's notice requirements inform this Court as to what is "a

reasonable time" for a party to make an appearance and to have "adequate

preparation" for constitutional due process purposes.  *See id.*; *GMAC*

*Mortg. Corp. v. Salisbury (In re Loloee)*, 241 B.R. 655, 661 (9th Cir. BAP 1999)

("In particular, the notice that is associated with the standard procedure is

pertinent.").

 Generally, when a chapter 7 trustee proposes to sell property of a

bankruptcy estate, he or she must give notice pursuant to Rule 2002, which

dictates the  notice be sent to "the debtor, the trustee, all creditors and

indenture trustees."  Rules 2002(a); *see also* Rule 6004(a) (requiring notice of

any sale of property not in the ordinary course of business be given in

accordance with the applicable provisions of Rule 2002(a)).  In this case,

Trustee, acting through his attorney, apparently reasoned that, because

Warkentin was not the debtor, the trustee, or a creditor, Trustee was not

required to send Warkentin notice of the proposed hearing and sale of the

Property co-owned by Warkentin.  *See* Trustee's Response at 4–5, Bk. Dkt.

MEMORANDUM OF DECISION - 14

No. 52.  However, where, as here, a trustee seeks authority to sell estate

property *free and clear of liens or other interests*, additional notice

requirements apply.  *See Citicorp. Mortg. Inc. v. Brooks (In re Ex-Cel Concrete*

*Co., Inc.)*, 178 B.R. 198, 202–03 (9th Cir. BAP 1995).  Specifically, Rule

6004(c) provides:

> A motion for authority to sell property free and
> clear of liens or other interests shall be made in
> accordance with Rule 9014 and *shall be served on*
> *the parties who have liens or other interests* in the
> property to be sold.

(emphasis added).

Warkentin had an ownership interest in the Property, and, per Rule

6004(c), he was entitled to notice of the proposed sale of his house.

Trustee's complete lack of notice to Warkentin denied him any reasonable

opportunity to object to, or even comment on, the proposed sale.  In

addition, Trustee's approach effectively denied Warkentin a sufficient

opportunity to exercise the other rights guaranteed to him by the Code,

MEMORANDUM OF DECISION - 15

such as the right to match the $55,000 purchase offer for the Property.[15]

Given this record, the Court concludes that the process employed by Trustee to obtain this Court's approval of the sale of the Property to the Homers violated Wakentin's due process rights. In other words, the Court's order approving the sale is void.

**2.      Section 363(m) Does Not Save the Sale..**

The Homers assert that, even if the Court finds its order was improperly granted, it may not grant relief to Warkentin from the order

_____

[15] Section 363(i) provides:

> Before the consummation of a sale of property to which subsection (g) or (h) of this section applies, or of property of the estate that was community property of the debtor and the debtor's spouse immediately before the commencement fo the case, the debtor's spouse, or a co-owner of such property, as the case may be, may purchase such property at the price at which such sale is to be consummated.

While a co-owner is required to have the opportunity to purchase property in which he has an interest "[b]efore the consummation of a sale of [that] property," and while Gray offered to sell Warkentin the Property for $55,000 a few hours before the sale to the Homers closed, the Court declines to find that Warkentin had adequate notice of the sale to allow him to any realistic opportunity to exercise his § 363(i) rights. This is particularly true since the notice of the sale that Warkentin received came from a third party, and not Trustee.

MEMORANDUM OF DECISION - 16

approving the sale because Homers are protected by § 363(m).[16]  Generally,

§ 363(m) provides that, if an "authorization *under subsection (b) or (c) of this*

*section* of a sale . . . of property" is reversed or modified on appeal, such

"does not affect the validity of a sale" when made to a good faith

purchaser.  (emphasis added); *see also United States v. Moberg Trucking, Inc.*

*(In re Moberg Trucking, Inc.)*, 112 B.R. 362, 363–64 (9th Cir. BAP 1990).  The

Homers argue that, if approval of Trustee's sale of the Property to them

was appropriate under § 363(b),[17] and assuming the Homers are good faith

purchasers,[18] § 363(m) prevents Warkentin's attack on the validity of the

---

[16]  Section 363(m) provides:

> The reversal or modification on appeal of an
> authorization under subsection (b) or (c) of this
> section of a sale or lease of property does not affect
> the validity of a sale or lease under such authorization
> to an entity that purchased or leased such property in
> good faith, whether or not such entity know of the
> pendency of the appeal, unless such authorization
> and such sale or lease were stayed pending appeal.

[17]  Section 363(c) applies where a debtor has a business, and is not
applicable here.

[18]  No evidence or arguments were presented to the Court by any party
concerning the Homers' status as good faith purchasers.

MEMORANDUM OF DECISION - 17

sale.  While it gives the Court no pleasure to do so, it respectfully disagrees

with the Homers.

Section 363(b) provides that a trustee may sell property of a

bankruptcy estate "after notice and a hearing."  *See also In re Moberg*

*Trucking, Inc.*, 112 B.R. at 363–64 ("Subsection (b) specifically requires a

'notice and hearing.'").  When a party, such as Warkentin, asserts that a

sale of estate property was void because of improper notice, § 363(m),

which only protects sales authorized pursuant to §§ 363(b) and(c), does not

shield that sale from scrutiny.  *See id.*; *see also In re Ex-Cel Concrete Co., Inc.*,

178 B.R. at 204–05 (finding that, while the Court of Appeals for the Seventh

Circuit has determined the policy of finality embodied in § 363(m) is more

important than due process concerns, in the Ninth Circuit, in spite of "the

exigent needs of the bankruptcy system or the innocence or good faith of

third parties involved in bankruptcy sales," § 363(m) does not protect a

sale authorized after inadequate notice and a lack of due process).  In other

words, in the Ninth Circuit, where a court approves a sale of estate

property without required notice, any subsequent sale was not authorized

MEMORANDUM OF DECISION - 18

under § 363(b), and § 363(m) does not protect the sale's validity.

Moreover, the clear language of § 363(m) shows it was intended by Congress to protect good faith buyers of estate property in the case of an appeal of the order authorizing the sale.  Of course, here, there is no appeal; Warkentin's request for relief from the sale order is before the same Court that originally entered the order.  Section 363(m) offers the Homers no protection in this procedural context.  *See Onoulil-Kona Land Co. v. Estate of Richards (In re Onouli-Kona Land Co.)*, 846 F.2d 1170, 1171 (9th Cir. 1988) (providing that, under certain conditions, § 363(m) applies to moot appeals); *Sw. Prods., Inc. v. Durkin (In re Sw. Prods., Inc.)*, 144 B.R. 100, 104–05 (9th Cir. BAP 1992) (indicating that § 363(m) prescribes a rule to determine when an appeal of a bankruptcy sale order is moot).

## Conclusion

The Court's order approving Trustee's sale of the Property free and clear of Warkentin's interest was void because Warkentin was not given adequate notice of that sale, nor an opportunity to exercise his rights under § 363(i).  Thus, Warkentin's right to due process was violated.  Under Rule

MEMORANDUM OF DECISION - 19

60(b)(4),[19] Warkentin is entitled to relief from the Court's order approving

Trustee's sale.

The sale order will be rescinded and set aside via separate order.[20]

---

[19]  Trustee argues the Court is not bound to provide Civil Rule 60(b) relief because Warkentin has not shown he had a meritorious defense to the order approving Trustee's sale.  Bk. Dkt. No. 52 at 6.  However, as this Court has noted in the past,

> [a]pplication of subdivision (4) is significantly different than application of the other five subdivisions of [Civil] Rule 60(b) . . . .  [F]or subdivisions (1), (2), (3), (5), and (6) of the rule, trial courts have broad discretion when considering motions to set aside default judgments . . . .  If, however, a judgment is void, thereby triggering [Civil] Rule 60(b)(4), the inquiry ends.  Stated differently, trial courts lack discretion when considering a [Civil] Rule 60(b)(4) motion.  If a judgment is void, no proof is required that the defaulting party has a meritorious defense or that the other party will not be prejudiced by having the judgment set aside.

*Ultrasonics, Inc. v. Eisberg (In re Ultrasonics, Inc.)*, 269 B.R. 856, 863 (Bankr. D. Idaho 2001) (quoting *Mountain Nat'l Bank v. Brackett (In re Brackett)*, 243 B.R. 910, 914 n.7 (Bankr. N.D. Ga. 2000)).

[20]  While Warkentin requests the Court to impose various forms of affirmative relief under these facts, such as by requiring Trustee to sell the estate's interest in the Property to Warkentin for $6,000, *see* Bk. Dkt. No. 40 at 8–9, a grant of additional relief in this context is not consistent with Civil Rule 60(b)(4).  The Court declines to speculate on the nature and extent of the rights of

(continued...)

MEMORANDUM OF DECISION - 20

Dated:  April 16, 2012

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

---

[20](...continued)
Warkentin, Trustee, or the Homers under these circumstances.

MEMORANDUM OF DECISION - 21